UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------
NIESHA MCKNIGHT, CHYNA SCOTT,
CHRISTOPHER SCOTT and JONATHAN SPRAUS,     17-CV-03000(ARR)(VMS)

        Plaintiffs,                          **SECOND AMENDED**
-against-                                  **COMPLAINT**

DETECTIVE JOSEPH CORTRIGHT, POLICE          **Jury Trial Demanded**
OFFICER FRANCIS NOONAN, SERGEANT
CHRISTOPHER SCHMITT, and DETECTIVE
JORGE SALAZAR, all of whom are sued
individually and in their official
capacities,

        Defendants.
-----------------------------------

      Plaintiffs, NIESHA MCKNIGHT, CHYNA SCOTT, CHRISTOPHER SCOTT and JONATHAN SPRAUS, by their counsel, AARON M. RUBIN, hereby allege as follows, upon knowledge as to themselves and their acts, and as to all other matters upon information and belief:

      1.   Plaintiffs bring this action to recover compensatory and punitive damages, attorney's fees and costs, pursuant to 42 U.S.C. § 1983 for violations of their civil rights under the United States Constitution caused by the conduct of Defendant police officers, each of whom are sued in their individual and official capacities.

      2.   Plaintiffs are a family whose lives were tossed into chaos when police officers, including those from the 102 Precinct and members of the Emergency Services

Unit ("ESU"), forcibly stormed their apartment on the second floor of 101-23 110th Street in Queens County in the early morning hours of February 16, 2016.

3. Niesha McKnight, who was 39-years old at the time and visibly six months pregnant, was thrown to the ground on her stomach by Detective Jorge Salazar, who pinned her with his knee to her back while her family helplessly watched in horror.

4. Niesha McKnight lived in her apartment with her 20-year old son, Christopher Scott, and her 18-year old daughter, Chyna Scott, who is now 20 years old at the time of filing this second amended Complaint.

5. Niesha Mcknight's boyfriend and the father of her unborn child, Jonathan Spraus, was also present in the apartment at the time of the incident. Mr. Spraus at the time of filing this second amended Complaint is 34 years old.

6. Defendant police officers were employed by the New York City Police Department ("NYPD") and acted under color of state law in the course and scope of their duties and functions as agents, employees and officers of the CITY OF NEW YORK, which is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. The CITY OF NEW

YORK is authorized by law to maintain the NYPD, which acts as the City's agent in the area of law enforcement. Additionally, the CITY OF NEW YORK was at all times relevant herein the public employer of Defendant police officers. Defendants Joseph Cortright, Francis Noonan, Christopher Schmitt and Jorge Salazar were at all relevant times police officers employed by NYPD and acting in their capacity as police officers under color of state law.

## Jurisdiction and Venue

7. Jurisdiction in this Court is established pursuant to 28 U.S.C. §§ 1331 and 1343.

8. Venue is properly laid in the Eastern District of New York under 28 U.S.C. §§ 1391(b) and (c) because the incident giving rise to the claims took place in Queens County.

9. Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

## Statement of Facts

10. At around 7:30 a.m., police officers, many of whom were dressed in riot gear, stormed the Queens

apartment on the second floor of 101-23 110th Street with their weapons drawn.

11. The officers entered unannounced.

12. The officers tossed the apartment, upending belongings and furniture.

13. Niesha McKnight was handcuffed and in tears, visibly six months pregnant and wearing only a bra.

14. Detective Salazar, who was a police officer assigned to ESU, shoved Niesha McKnight to the floor on her pregnant stomach, despite her urgent pleas that she was pregnant. Detective Salazar ordered her down on the ground and pinned her to the floor with his knee while she was handcuffed.

15. Chyna Scott was in her bedroom still partially undressed when police officers entered with their weapons drawn and told her not to move. Chyna Scott complied and was handcuffed.

16. Police officers pointed their weapons at Christopher Scott, and ordered him down to the ground. He complied and was handcuffed.

17. Police took Christopher Scott handcuffed into the kitchen, where he watched Detective Salazar throw his pregnant mother to the ground.

18. Police officers pointed their weapons at Jonathan Spraus and ordered him to the ground. They pushed him face down with a foot on his back. Spraus complied and was handcuffed.

19. Police officers, including, upon information and belief, Detective Joseph Cortright and Police Officer Francis Noonan, claimed to recover a marijuana cigarette from a room in the apartment where nobody was present.

20. Police officers, including, upon information and belief, Detective Joseph Cortright and Police Officer Francis Noonan, claimed to recover a single bullet from a drawer in Christopher Scott's bedroom. The single bullet was found in a jewelry box and there was no evidence recovered that it was ever intended to be used in relation to any firearm.

21. Police officers, including, upon information and belief, Detective Joseph Cortright and Police Officer Francis Noonan, claimed to recover a small digital scale in another room, which they characterized without basis as drug paraphernalia.

22. Police officers, including, upon information and belief, Detective Joseph Cortright and Police Officer Francis Noonan, claimed to recover a bottle containing a

liquid that they claimed was Promethazine from a room in the apartment where nobody was present.

23. Police officers, including, upon information and belief, Detective Joseph Cortright, Police Officer Francis Noonan and their supervisor Sergeant Christopher Schmitt arrested Niesha McKnight, Chyna Scott, Jonathan Spraus and Christopher Scott without probable cause or justification and unlawfully detained them.

24. Police transported Niesha McKnight in custody to the 102 Precinct where she was imprisoned.

25. Police searched and interrogated Niesha McKnight.

26. Police subsequently released Niesha McKnight from the 102 Precinct and did not charge her with any offense, and she was never prosecuted for any offense.

27. Niesha McKnight sought treatment at the emergency room in Jamaica Hospital after her release from the 102 Precinct.

28. Police removed Chyna Scott in a police vehicle and transported her to the 102 Precinct where she was held in custody and imprisoned.

29. Police searched Chyna Scott and interrogated her.

30. Police subsequently released Chyna Scott from the 102 Precinct and did not charge her with any offense, and she was never prosecuted for any offense.

31. Police transported Christopher Scott to the 102 Precinct where he was held in custody and imprisoned.

32. While he was in custody, Christopher Scott was searched, interrogated, and fingerprinted and charged with a violation, two misdemeanors and a felony relating to all of the items found in the apartment for which there was no probable cause to effect his arrest by Detective Joseph Cortright, Police Officer Francis Noonan and their supervisor Sergeant Christopher Schmitt.

33. Christopher Scott was transported to central booking, where he was imprisoned.

34. Christopher Scott was arraigned in Queens County criminal court on a criminal court complaint containing false charges signed and sworn to by Detective Joseph Cortright.

35. Upon information and belief, Christopher Scott's case was subsequently dismissed.

36. Police transported Jonathan Spraus to the 102 Precinct where he was held in custody and imprisoned.

37. While he was in custody, Jonathan Spraus was searched, interrogated, and fingerprinted, and charged with

a violation, two misdemeanors and a felony relating to all of the items found in the apartment for which there was no probable cause.

38. Jonathan Spraus was transported to central booking, where he was imprisoned.

39. Jonathan Spraus was arraigned in Queens County criminal court on a criminal court complaint containing false charges signed and sworn to by Detective Joseph Cortright.

40. Jonathan Spraus was released on his own recognizance at the arraignment and returned to court several times and pled guilty to a violation.

41. The conduct by Defendants caused Plaintiffs to suffer loss of liberty, emotional and psychological pain, embarrassment, humiliation, reputational harm, financial loss, and the deprivation of their Constitutional rights.

### **Plaintiffs' Cause of Action for False Arrest/Unlawful Imprisonment**

(as to Defendants Cortright, Noonan and Schmitt)

42. Plaintiffs re-allege and incorporate by reference the allegations set forth above.

8

43. In committing the acts and omissions complained of herein, Defendants Cortright, Noonan and Schmitt acted under color of state law to deprive Plaintiffs of their federal Constitutional rights, including those under the Fourth Amendment pursuant to 42 U.S.C. Section 1983, causing Plaintiffs harm and damages.

44. The conduct by Defendants Cortright, Noonan and Schmitt constituted Plaintiffs' false arrest and unlawful seizure and imprisonment.

**Plaintiffs Christopher Scott and Jonathan Spraus Cause of Action for Malicious Prosecution**
(as to Defendant Cortright)

45. Plaintiffs Christopher Scott and Jonathan Spraus re-allege and incorporate by reference the allegations set forth above.

46. In committing the acts and omissions complained of herein, Defendant Cortright, acting under color of state law, deprived Plaintiffs Christopher Scott and Jonathan Spraus of their federal Constitutional rights, including those under the Fourth Amendment pursuant to 42 U.S.C. Section 1983, and caused them harm and damages.

47. The conduct by Detective Cortright constituted malicious prosecution.

## Plaintiff Niesha McKnight's Claim of Excessive Force and False Arrest Against Detective Salazar

48.   Plaintiff Niesha McKnight re-allege and incorporates by reference the allegations set forth above.

49.   In committing the acts and omissions complained of herein, Defendant Jorge Salazar, acting under color of state law to deprive Plaintiff McKnight of her federal Constitutional rights, including those under the Fourth Amendment pursuant to 42 U.S.C. Section 1983, caused Plaintiff harm and damages.

50.   The conduct by Detective Salazar towards Plaintiff Niesha McKnight constituted excessive force and false arrest causing her physical harm and damages.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs demand the following relief jointly and severally against all defendants:

(1) Compensatory damages in an amount to be determined by a jury at trial;

(2) Punitive damages in an amount to be determined by a jury at trial;

(3) The convening and empanelling of a jury to consider the merits of the claims herein;

(4) Costs, interest and attorney's fees;

(5) Such other and further relief as this court may deem just and proper.

Dated: New York, New York
       July 25, 2018

                                        AARON M. RUBIN
                                        Attorney for Plaintiff

                                        _____
                                        BY: Aaron M. Rubin, Esq.

                                        9 East 40th Street, 11th Floor
                                        New York, New York 10016

                                        (212) 725-4600

                                        aaron.m.rubin@gmail.com