UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NIESHA MCKNIGHT, CHYNA SCOTT,
CHRISTOPHER SCOTT and JONATHAN SPRAUS,

   Plaintiffs,

   v.

DETECTIVE JOSEPH CORTRIGHT, POLICE OFFICER
FRANCIS NOONAN, SERGEANT CHRISTOPHER
SCHMITT, and DETECTIVE JORGE SALAZAR, all of
whom are sued individually and in their official capacities,

   Defendants.

**17-cv-3000 (ARR) (VMS)**

**Opinion & Order**

ROSS, United States District Judge:

  Plaintiffs Niesha McKnight, Chyna Scott ("Chyna"), Christopher Scott ("Christopher"), and Jonathan Spraus (collectively, "plaintiffs") bring this action under 42 U.S.C. § 1983 against various members of the New York Police Department ("NYPD"): Detective Joseph Cortright, Officer Francis Noonan, Sergeant Christopher Schmitt, and Detective Jorge Salazar (collectively, "officers" or "defendants"). Plaintiffs' claims stem from the officers' search of an apartment on the morning of February 16, 2016, and the resulting detention of all four plaintiffs and prosecution of plaintiffs Spraus and Christopher. Defendants have filed a motion for summary judgment. For the reasons that follow, defendants' motion is granted in part and denied in part. Specifically, defendants' motion for summary judgment on Spraus's and Christopher's false-arrest and malicious-prosecution claims is granted, and defendants' motion for summary judgment on McKnight's and Chyna's false-arrest claims, as well as McKnight's excessive-force claim, is denied.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are drawn from the pleadings, defendants' Local Rule 56.1 Statement, and the parties' submissions in support of or in opposition to defendants' summary-judgment motion. The facts cited are undisputed unless otherwise noted.[1]

In February 2016, McKnight was living in an apartment in Queens, New York, with her two adult children, Chyna and Christopher. *See* Defs.' 56.1 ¶ 10, ECF No. 39. On the morning of February 16, 2016, McKnight was at her apartment with Chyna, Christopher, and her boyfriend, Spraus. *See id.* ¶¶ 10–11; Second Am. Compl. ¶ 5 ("Compl."), ECF No. 31. At the time, McKnight was six-months pregnant with Spraus's child. *See* Compl. ¶¶ 3, 5. At approximately 7:30am, defendants Cortright, Schmitt, and Noonan lawfully executed a "no knock" search warrant on McKnight's apartment. *See* Defs.' 56.1 ¶¶ 4–6. Officers from the Emergency Services Unit ("ESU"), including defendant Salazar, assisted with the warrant execution. *Id.* ¶ 5. The warrant was for firearms and ammunition, *see* Kathleen D. Reilly Decl. ("Reilly Decl."), Ex. E ("Search Warrant"), ECF No. 38-5, and Christopher was the target, *see* Reilly Decl., Ex. B ("Cortright Dep., Pt. 1"), at 66:03–16, ECF No. 38-2.

---

[1] Defendants seek to strike several of plaintiffs' responses to defendants' 56.1 Statement on the grounds that the responses violate Federal Rule of Civil Procedure 56(c) and Local Civil Rule 56.1. *See* Defs.' Reply Mem. of Law in Further Supp. Mot. Summ. J. 1–2 ("Defs.' Reply"), ECF No. 47; Defs.' Resp. Pls.' 56.1 Opp'n ¶ 1, ECF No. 46. Defendants contend that the responses contain "immaterial facts or genuine facts of material issue" that "should have been provided in a 'separate, short and concise statement of additional material facts,'" Defs.' Resp. Pls.' 56.1 Opp'n ¶ 1 (quoting Local Civ. R. 56.1(b)), as well as improper legal arguments, *see id.*; Defs.' Reply 1. "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). A party seeking to strike a Rule 56.1 statement "bears a heavy burden, as courts generally disfavor motions to strike." *Pharmacy, Inc. v. Am. Pharm. Partners, Inc.*, No. 05–776 (DRH)(AKT), 2007 WL 2728898, at *1 (E.D.N.Y. Sept. 14, 2007). The court does not find that plaintiffs' responses "contraven[e] the requirements or purposes of Rule 56.1 such that [they] should be struck." *Christians of Cal., Inc. v. Clive Christian N.Y., LLP*, No. 13–cv–275 (KBF), 2014 WL 3407108, at *2 (S.D.N.Y. July 7, 2014). Accordingly, defendants' motion to strike is denied. To the extent that plaintiffs' responses do contain improper legal arguments or statements, the court will disregard that material and rely exclusively on the record and the parties' memoranda of law. *See, e.g.*, *JD2 Envtl., Inc. v. Endurance Am. Ins. Co.*, No. 14-CV-8888 (JPO), 2017 WL 751157, at *1 n.1 (S.D.N.Y. Feb. 27, 2017); *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, No. 09 Civ. 1251(DAB), 2011 WL 3586060, at *4 (S.D.N.Y. July 29, 2011), *vacated on other grounds*, 715 F.3d 102 (2d Cir. 2013).

According to McKnight, when the officers entered the apartment, they handcuffed her "right away." Aaron M. Rubin Decl. ("Rubin Decl."), Ex. 1 ("McKnight Dep."), at 49:03–06, ECF No. 42-1. She claims that she was dressed only in a bra. *Id.* at 48:10–12; *see also* Rubin Decl., Ex. 8 ("Chyna Dep."), at 71:03–06, ECF No. 42-8 (stating that her mother was "in her bra and work pants" when the officers entered the apartment). McKnight testified that as the officers searched her apartment, she started "crying hysterically" because she wanted to know why they were there, they refused to give her a shirt, and she could not find her phone to inform her workplace she would be late. *See* McKnight Dep. 47:22–48:20. According to McKnight, Detective Salazar was getting irritated with her and began to antagonize her, so she told him she was going to file a complaint. *See id.* at 48:20–24.[2] She alleges that in response, Detective Salazar forcefully threw her to the ground on her pregnant stomach while she was handcuffed and put his knee into her back. *See id.* at 48:25–49:02, 55:20–56:21; *see also* Chyna Dep. 54:19–21 (stating that an officer "put his knee in my mom's back and she was six months pregnant at the time, and he threatened to put her head into the wall"). Chyna testified that McKnight looked "[v]ery pregnant" at the time of the incident. Chyna Dep. 71:20–22. Both McKnight and Chyna claim to have told the officers about McKnight's pregnancy prior to the incident. *See* McKnight Dep. 56:05–09; Chyna Dep. 71:23–25.

Detective Salazar denies throwing McKnight to the ground. *See* Kathleen D. Reilly Suppl. Decl. ("Reilly Suppl. Decl."), Ex. K, at 51:03–24, 54:11–17, ECF No. 45-4 (testifying that McKnight fell when he placed his hand on her arm in order to prevent her from approaching another officer). He also claims that McKnight was not handcuffed until after her fall, *see id.* at 58:18–23, that she was not visibly pregnant, *see id.* at 42:09–11, 56:18–57:13, and that he did not

---

[2] Although McKnight did not know the name of Detective Salazar during her deposition, she later identified the man she was testifying about as Detective Salazar. *See* Rubin Decl., Ex. 2, ECF No. 42-2.

3

know she was pregnant under after she fell, *see id.* at 56:06–22. Detective Frank Ferrara, one of the ESU officers, wrote in a memo that McKnight was "re[st]rained on the floor and handcuffed" for being uncooperative, but he testified that he did not see how she ended up on the floor. *See* Reilly Suppl. Decl., Ex. X ("Ferrara Dep."), at 15:07–24, 25:07–26:25, ECF No. 45-6. McKnight claims that she felt pain and anxiety from the incident, *see* McKnight Dep. 62:10–23, 106:05–22, 108:06–18, 109:16–24, 110:20–24, and that she sought medical attention at Jamaica Hospital later that day because she felt her pregnant stomach "tightening up," *see id.* at 98:03–99:21. McKnight testified that she scheduled an appointment with her obstetrician for a few days later, and that while everything appeared fine, the doctor continued to monitor her and the baby because of what happened. *See* Reilly Suppl. Decl., Ex. J, at 104:04–105:18, ECF No. 45-3. Defendants note that McKnight did not alert the officers to a need for medical attention. *See* Defs.' 56.1 ¶ 24.

During the search of the apartment, the officers recovered a bullet cartridge from Christopher's dresser drawer, which Christopher admitted belonged to him, *see* Pls.' 56.1 Opp'n ¶ 14, ECF No. 43, and a marijuana cigarette from Spraus, *see id.* ¶ 13; *see also* Defs.' Mem. of Law in Supp. Mot. Summ. J. 9 ("Defs.' Mem. of Law"), ECF No. 40. The officers also found a bottle of red liquid alleged to be promethazine,[3] plastic bags, and an electronic scale. *See* Pls.' 56.1 Opp'n ¶¶ 12–13. The parties agree that the alleged promethazine and plastic bags were in a dresser drawer in a front/storage room, but they dispute whether the scale was found on the living-room table or in the front/storage room. *See id.* After these items were discovered, at

---

[3] Officers Cortright and Noonan testified that their participation in prior investigations regarding promethazine led them to conclude that the bottle of red liquid could be a narcotic. *See* Defs.' Reply 3 n.2. Defendants allege that the liquid was never tested. *See id.* The plaintiffs were not charged for any crime in connection with the alleged promethazine. *See* Defs.' 56.1 ¶¶ 17, 20.

4

approximately 7:55am, plaintiffs were transported to the 102 Precinct. *See* Defs' 56.1 ¶ 15.[4]
After spending between one and four hours at the precinct, McKnight and Chyna were released
and their arrests voided. *See* Defs.' Resp. Pls.' 56.1 Opp'n ¶ 18. Spraus and Christopher, on the
other hand, were charged with unlawful possession of marijuana and ammunition. *See* Reilly
Decl., Ex. O ("Criminal Court Complaint"), ECF No. 38-15. The men spent approximately 12
hours in custody before being arraigned and released. *See* Defs.' 56.1 ¶ 21. After their
arraignments, Spraus and Christopher appeared in criminal court one more time, at which point
they each accepted an adjournment in contemplation of dismissal ("ACD"), and their cases were
dismissed. *See id.* ¶¶ 22–23.

On May 18, 2017, plaintiffs filed a complaint against the City of New York and unnamed
NYPD police officers, alleging violations of their federal civil rights and related state tort laws.
*See* First Compl., ECF No. 1. On November 30, 2017, plaintiffs filed an amended complaint,
naming defendants Cortright, Noonan, and Schmitt in the action. *See* First Am. Compl., ECF No.
13. On August 14, 2018, plaintiffs filed their second amended complaint, naming defendant
Salazar in the action, withdrawing their claims against the City of New York, and limiting their
claims to federal claims for (1) false arrest/unlawful imprisonment by all four plaintiffs against
defendants Cortright, Noonan, and Schmitt, (2) malicious prosecution by Spraus and Christopher
against defendant Cortright, and (3) excessive force by McKnight against defendant Salazar. *See*
Compl. ¶¶ 42–50. On September 7, 2018, defendants moved for summary judgment on all
claims. *See* Notice Mot. Summ. J., ECF No. 37; Defs.' Mem. of Law. Plaintiffs oppose
defendants' motion. *See* Pls.' Mem. of Law in Opp'n Defs.' Mot. Summ. J. ("Pls.' Opp'n"), ECF
No. 44. For the following reasons, defendants' motion for summary judgment on Spraus's and

---

[4] While plaintiffs object to any legal conclusions in paragraph 15 of defendants' 56.1 Statement, they do not dispute the facts surrounding their arrest. *See* Pls.' 56.1 Opp'n ¶ 15.

Christopher's false-arrest and malicious-prosecution claims is granted, and their motion for summary judgment on McKnight's and Chyna's false-arrest claims, as well as McKnight's excessive-force claim, is denied.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed factual issues but to determine whether there is a genuine issue to be tried. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks and ellipses omitted) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).

The moving party carries the burden of proving that there is no genuine dispute respecting any material fact and "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir. 1994). Once this burden is met, in order to avoid the entry of summary judgment, the nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998) (citing *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525–26 (2d Cir. 1994)). "A genuine issue is presented if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Husser v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 253, 262 (E.D.N.Y. 2015) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)). In

reviewing the record before it, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997).

## DISCUSSION

### I. False Arrest[5]

Plaintiffs bring federal false-arrest claims against defendants Cortright, Noonan, and Schmitt. *See* Compl. at 8. To prevail on a claim for false arrest, a plaintiff must show: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was aware of the confinement, (3) the confinement was without the plaintiff's consent, and (4) "the confinement was not otherwise privileged." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (quoting *Broughton v. State*, 335 N.E.2d 310, 314 (N.Y. 1975)). Probable cause to arrest "is a complete defense to an action for false arrest." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). Defendants seek summary judgment dismissing plaintiffs' false-arrest claims on the grounds that they had probable cause to arrest Spraus and Christopher for possession of the marijuana and ammunition cartridge, and probable cause to arrest all four plaintiffs for constructive possession of contraband. *See* Defs.' Mem. of Law 8–9. I will address each argument in turn.

---

[5] To the extent that plaintiffs brings a claim under the Fourth Amendment for unlawful search and seizure, *see* Compl. ¶¶ 43, 49–50; Defs.' Mem. of Law 6–8, 16–17, such a claim is without merit. It is undisputed that the officers entered and searched plaintiffs' apartment pursuant to a valid search warrant. *See* Search Warrant. "[O]fficers executing a search warrant for contraband have the authority 'to detain the occupants of the premises while a proper search is conducted.'" *Muehler v. Mena*, 544 U.S. 93, 98 (2005) (quoting *Michigan v. Summers*, 452 U.S. 692, 705 (1981)). "Inherent in [this] authorization . . . is the authority to use reasonable force to effectuate the detention." *Id.* at 98–99. Thus, the search of plaintiffs' apartment, their temporary detention, and any alleged use of force in the form of handcuffing were lawful. *See id.* ("[Plaintiff's] detention for the duration of the search was reasonable . . . because a warrant existed to search [the address] and she was an occupant of that address at the time of the search. . . . The officers' use of force in the form of handcuffs to effectuate [plaintiff's] detention . . . , as well as the detention of the three other occupants, was reasonable because the governmental interests outweigh the marginal intrusion."). Plaintiffs make no argument to the contrary. *See generally* Pl.'s Opp'n. Accordingly, this claim is dismissed.

### A. Defendants had probable cause to arrest Spraus and Christopher, so their false-arrest claims fail as a matter of law.

"Probable cause to arrest exists when the officers have reasonably trustworthy information as to facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (ellipses and brackets omitted) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)). Probable cause is assessed "objectively" based on "the facts known by the arresting officer at the time of the arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant*, 101 F.3d at 852. However, "[i]f the issue of probable cause is 'predominately factual in nature,' then it is 'properly presented to the jury.'" *Barksdale v. Colavita*, 506 F. App'x 82, 84 (2d Cir. 2012) (quoting *Moore v. Comesanas*, 32 F.3d 670, 673 (2d Cir. 1994)).

Defendants claim to have had (1) probable cause to arrest Spraus for unlawful possession of marijuana, in violation of N.Y. Penal Law § 221.05 (McKinney 2018) (making it a crime for a person to knowingly and unlawfully possess marijuana), and (2) probable cause to arrest Christopher for unlawful possession of ammunition, in violation of N.Y.C. Administrative Code § 10-131(i)(3) (making it "unlawful for any person not authorized to possess a pistol or revolver within the city of New York to possess pistol or revolver ammunition, provided that a dealer in rifles and shotguns may possess such ammunition"). *See* Defs.' Mem of Law 9; *see also* Criminal Court Complaint. It is undisputed that Spraus admitted to possessing the marijuana and Christopher admitted to possessing the ammunition. *See* Pls.' 56.1 Opp'n ¶¶ 13–14. Spraus's admission gave the officers probable cause to arrest him. *See Serrano v. City of New York*, No.

16 Civ. 8105 (AKH), 2018 WL 3392869, at *6 (S.D.N.Y. July 12, 2018) (holding that plaintiff's false arrest claim "must be dismissed" because "during the officers' pat-down search, [he] admitted that he had a marijuana cigarette on his person," which "gave [the] officers probable cause to arrest him for possession of marijuana under § 221.05 of the New York Penal Law").[6] Christopher's admission likewise made his arrest valid. *See Galarza v. Monti*, 327 F. Supp. 3d 594, 602 (S.D.N.Y. 2018) ("'If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment arrest the offender.' This holds true for violations of the City Administrative Code." (first quoting *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); then citing *United States v. Rodriguez*, 368 F. App'x 178, 180 (2d Cir. 2010))), *appeal docketed*, No. 18-2715 (2d Cir. Sept. 13, 2018). Because the officers had probable cause to arrest Spraus and Christopher, the men cannot prevail on their false arrest claims.[7]

---

[6] The officers had probable cause to arrest Spraus even though they had the option of issuing a summons. *See, e.g.*, *Cabral v. City of New York*, 662 F. App'x 11, 13 (2d Cir. 2016) (summary order) (collecting cases); *People v. Rodriguez*, 922 N.Y.S.2d 384, 385 (N.Y. App. Div. 2011) ("The arrest [for violating N.Y. Penal Law § 221.05] was lawful, since a police officer's authority to effect a custodial arrest for a violation, other than a minor vehicular offense, remains valid even where the officer has the option of issuing a summons instead." (citations omitted)).

[7] Plaintiffs argue that probable cause was lacking because the officers "failed to name any specific statute in their arrest paperwork relating to the single bullet, and then charged an entirely irrelevant and inapplicable section of the administrative code in the criminal complaint." Pls.' Opp'n 3. While the criminal-court complaint erroneously cited a provision of the N.Y.C. Administrative Code prohibiting the possession of a bullet that is a different caliber from a firearm that is lawfully possessed, *see* Criminal Court Complaint; N.Y.C. Administrative Code § 10-131(i)(4), "the offense that an officer cites at the time of the arrest need not be the same as, or even 'closely related' to, the offense that the officer later cites as probable cause for the arrest," *Garcia v. Does*, 779 F.3d 84, 90 n.7 (2d Cir. 2015); *see also Rodriguez v. Village of Ossining*, 918 F. Supp. 2d 230, 240–41 (S.D.N.Y. 2013) (noting that a probable cause determination is based on the validity of the arrest, not the validity of the charges). As discussed above, defendants had probable cause to arrest Christopher for violating the N.Y.C. Administrative Code provision cited in their moving brief. The only case plaintiffs cite to support their false-arrest argument is *People v. Volkes*, 771 N.Y.S.2d 797, 799 (Crim. Ct. 2003). As defendants note, this case is irrelevant to the matter at hand because it addresses a different section of the N.Y.C. Administrative Code and holds that "in order for [a] complaint to be converted into an information the prosecution must demonstrate that the ammunition is suitable to be fired." *Id.*; *see also* Defs.' Reply 4. The relevant question here is what constitutes probable cause to arrest, not what is required to turn a complaint into an information.

**B. Factual issues preclude a determination that defendants had probable cause or arguable probable cause to arrest plaintiffs McKnight and Chyna, so their false-arrest claims remain.**

Defendants argue that they had probable cause to arrest McKnight and Chyna for constructive possession of contraband, namely the scale and the alleged promethazine.[8] Under the constructive-possession doctrine, an individual who exercises "dominion and control" over contraband is considered to be in possession of that contraband. *United States v. Rios*, 856 F.2d 493, 496 (2d Cir. 1988) (per curiam); *see also* N.Y. Penal Law § 10.00(8) (McKinney 2018). Pursuant to this doctrine, probable cause to arrest exists when the facts available to a police officer at the time of arrest support a "reasonable inference" that an individual "exercised dominion and control over" illegal contraband. *See Maryland v. Pringle*, 540 U.S. 366, 372 (2003). Under New York law, possession of scales or bags for the purpose of packaging drugs is a criminal offense. *See* N.Y. Penal Law § 220.50 (McKinney 2018). Further, officers Cortright and Noonan testified that their prior experience led them to conclude that the bottle of red liquid alleged to be promethazine could be a narcotic. *See* Defs.' Reply 3 n.2. Thus, defendants claim, because a "reasonable officer could determine the scale or alleged promethazine belonged to . . . [the] adult occupants of the residence," they "had probable cause to arrest [McKnight and Chyna] for constructive possession of the contraband." Defs.' Mem. of Law 10–11.

I decline to grant summary judgment for defendants, because even assuming that constructive possession of the items would give the officers sufficient probable cause to arrest McKnight and Chyna,[9] the record does not reveal that the women constructively possessed the

---

[8] Because I find that the officers had probable cause to arrest Spraus and Christopher for unlawful possession of marijuana and ammunition, I do not address whether the officers had probable cause to arrest them for constructive possession of contraband.

[9] I assume, without deciding, that constructive possession of the items would at least meet the arguable probable cause standard. *See, e.g.*, *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013) ("Even where a reviewing court . . . concludes that probable cause to arrest was lacking in a given case, an officer 'will . . . be entitled to

items as a matter of law. Constructive-possession cases regarding contraband found by law-enforcement officers in residences generally fall into two categories. First, in cases where contraband is found in plain view in a dwelling's common area, courts have routinely held that there is probable cause to arrest everyone in the dwelling. *See United States v. Heath*, 455 F.3d 52, 57 (2d Cir. 2006) ("[T]hose who are permitted to observe obvious criminal activity in a home are, absent indications to the contrary, likely to be complicit in the offense."); *Guzman v. United States*, No. 11 Civ. 5834(JPO), 2013 WL 543343, at *5 (S.D.N.Y. Feb. 14, 2013) ("When drugs are out in the open, all persons in the apartment are found to constructively possess them."); *Takacs v. City of New York*, No. 09 Civ. 481(LBS), 2011 WL 8771384, at *3 (S.D.N.Y. Jan. 24, 2011). In this case, it is undisputed that the alleged promethazine was not in plain view because it was recovered "from a dresser drawer in the front/storage room." Defs.' 56.1 ¶ 13. There is a dispute, however, regarding the location of the electronic scale. *See id.* ¶ 12 (claiming that the scale was found on the living room table); Pls.' 56.1 Opp'n ¶ 12 (claiming that the scale was found in the storage room); Cortright Memo 17, ECF No. 38-7 (stating that a scale was found on the living room table); Noonan Memo 75, ECF No. 38-8 (same); Rubin Decl., Ex. 4 ("Cortright Dep., Pt. 2"), at 134:08–18, ECF No. 42-4 (testifying that he believes he recovered the scale in the dresser in the front/storage room). The conflicting information in the record regarding the location of the electronic scale precludes a determination of constructive possession on a plain-view theory.

---

qualified immunity . . . if he can establish that there was "arguable probable cause" to arrest. Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004))). I note, however, that possession of the electronic scale in these circumstances would likely not rise to the level of criminally using drug paraphernalia in violation of N.Y. Penal Law § 220.50. *See, e.g.*, *People v. Key*, No. 2007NY071625, 2008 WL 540649, at *3 (N.Y. Crim. Ct. Feb. 27, 2008).

In cases where contraband is found in a dwelling not in plain view, a court must conduct a fact-specific inquiry to determine whether the facts available to the officer at the time of the arrest support a "reasonable inference" that the particular individual "exercised dominion and control over" the area where the contraband was found. *See Pringle*, 540 U.S. at 372. While courts disagree as to whether residency at a dwelling is sufficient to establish probable cause to arrest based on constructive possession, *see, e.g.*, *Jackson ex rel. Jackson v. Suffolk County*, 87 F. Supp. 3d 386, 406 (E.D.N.Y. 2015), courts have declined to find constructive possession when the record fails to establish that the officers *knew* that the individuals were residents of the apartment containing contraband, *see Haskins v. City of New York*, No. 15-CV-2016 (MKB), 2017 WL 3669612, at *6, *9 (E.D.N.Y. Aug. 24, 2017); *cf. Cruz v. City of New York*, No. 15 CV 7731-LTS-AJP, 2017 WL 3841870, at *1 (S.D.N.Y. Sept. 1, 2017) (finding constructive possession when the officer knew the defendant was the tenant of record and the defendant identified herself to the officer as the "head of the house" and the "owner" of the apartment); *Jenkins v. City of New York*, No. 10 Civ. 4535(AJN), 2013 WL 870258, at *7–8 (S.D.N.Y. Mar. 6, 2013) (finding constructive possession when the officers had done a computer and phone check and knew the defendant was the parent in the household). I find the knowledge requirement persuasive, given that "[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at 152 (citing *Pringle*, 540 U.S. at 371). Here, there is no evidence in the record to suggest that the officers knew McKnight and Chyna were residents of the apartment. *See, e.g.*, Cortright Dep., Pt. 1, at 101:04–07 (testifying that he does not remember plaintiffs

telling him that they lived at the apartment).[10] Thus, defendants' argument that McKnight's and Chyna's residency gave rise to probable cause for constructive possession fails.[11]

"Mere proximity or presence is . . . insufficient to support a finding of constructive possession." *United States v. Rodriguez*, 392 F.3d 539, 548 (2d Cir. 2004). Rather, when an individual is merely present at a dwelling where contraband is found, the probable-cause analysis turns on whether there were circumstances reasonably connecting the individual to the contraband. Such circumstances include "the presence of documents pertaining to the [individual] in the same location as the [contraband], the [individual's] possession of a key to the location where the [contraband is] found," *Haskins*, 2017 WL 3669612, at *5 (citation omitted), the discovery of contraband in the individual's bedroom, *see Davis v. City of New York*, No. 04-CV-3299 (JFB)(RLM), 2007 WL 755190, at *5 (E.D.N.Y. Feb. 15, 2007), and the presence of the individual's clothing or belongings in close proximity to the contraband, *see United States v. Gaviria*, 740 F.2d 174, 185 (2d Cir. 1984); *Cruz*, 2017 WL 3841870, at *2.[12] Here, defendants have provided no evidence connecting McKnight or Chyna to the storage room where the alleged promethazine (and contestably the scale) were discovered. *See, e.g.*, Cortright Dep., Pt. 2, at 124:23–125:15 (testifying that he does not recall the storage room belonging to any of the

---

[10] In their briefing, defendants emphasize that McKnight was the undisputed "leaseholder of the apartment at the time the search warrant was executed." Defs.' Mem. of Law 10. There is no evidence in the record, however, to suggest that the officers knew that McKnight was the leaseholder. *See id.* (relying on McKnight's deposition testimony). I therefore do not consider this fact as part of the probable-cause analysis.

[11] To support their constructive-possession argument, defendants also rely on McKnight's deposition testimony that she had seen the scale in the apartment and had used it for weighing coins and food. *See* Defs.' Mem. of Law 10; McKnight Dep. 74:03–24. In addition to the exculpatory nature of her testimony, there is nothing in the record to suggest that McKnight admitted ownership of the scale during the officers' search. I therefore conclude that her testimony is irrelevant to the probable-cause analysis.

[12] Courts have declined to find probable cause for constructive possession when, for example, the contraband was found in another person's coat pocket, *see United States v. Ortiz*, 943 F. Supp. 2d 447, 458 (S.D.N.Y. 2013), and when the contraband was in another's person's locked room in the apartment, *see Jenkins*, 2013 WL 870258, at *10.

plaintiffs or containing belongings connected to any one plaintiff). Thus, the record lacks circumstances demonstrating constructive possession.

Further, courts have declined to find probable cause for constructive possession when the record fails to establish that the individuals were aware of or complicit in the illegal activity. *See Haskins*, 2017 WL 3669612, at *6–7, *9 ("Due to the absence of any evidence that [the detective] knew that Plaintiff observed or was involved in any narcotics activity, [the detective] lacked probable cause to arrest Plaintiff for constructive possession of the narcotics on that basis."); *Jenkins*, 2013 WL 870258, at *8–11 ("Given that there remain questions of fact as to whether the officers were reasonable in suspecting that [plaintiff] knew that there were drug sales in the apartment, . . . the Court cannot make a finding at this time that there was probable cause or arguable probable cause to conclude that she was in constructive possession of the drugs."). In this case, it does not appear that McKnight or Chyna were aware of or complicit in any narcotics activity. Spraus admitted that the marijuana cigarette belonged to him, and the presence of an electronic scale and a bottle of red liquid have numerous innocuous explanations. Further, the women were not the target of the search warrant, which was for firearms and ammunition, not narcotics. *See* Search Warrant; *cf.* Jenkins, 2013 WL 870258, at *8 (holding that the officers had probable cause to conclude that plaintiff knew that her apartment was being used to sell drugs because the officers "had been informed of numerous drug sales at [her apartment]"). In sum, the disputed location of the scale, as well as the lack of evidence suggesting the officers knew McKnight and Chyna resided at the apartment, were connected to the front/storage room, or were involved in illegal activity, preclude a summary-judgment determination that the officers had probable cause to arrest McKnight and Chyna for constructive possession of contraband. For the same reasons, I find that there are issues of material fact as to arguable probable cause. *See*

*Haskins*, 2017 WL 3669612, at *13; *supra* note 9. Thus, defendants are not entitled to qualified immunity on McKnight's and Chyna's false-arrest claims.[13]

## II. Malicious Prosecution

Plaintiffs Spraus and Christopher accuse Detective Cortright of malicious prosecution in violation of their federal constitutional rights. *See* Compl. ¶¶ 46–47. Malicious prosecution claims brought under § 1983 are "substantially the same" as claims for malicious prosecution under state law. *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (first citing *Weyant*, 101 F.3d at 852; then citing *Conway v. Village of Mount Kisco*, 750 F.2d 205, 214 (2d Cir. 1984)). Under New York law, a plaintiff claiming malicious prosecution must show "(1) the initiation or continuation of a criminal proceeding against [him]; (2) termination of the proceeding in [his] favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant[s'] actions." *Id.* at 136 (citation omitted); *see also Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). Courts in this circuit do not consider an ACD a favorable termination for purposes of a malicious-prosecution claim. *See, e.g.*, *Green v. Mattingly*, 585 F.3d 97, 103 (2d Cir. 2009) (quoting *Shain v. Ellison*, 273 F.3d 56, 68 (2d Cir. 2001)); *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 418 (2d Cir. 1999); *Murphy v. Lynn*, 118 F.3d 938, 949 (2d Cir. 1997); *Gordon v. City of New York*, No. 15-CV-2439 (CBA) (VMS), 2016 WL 10678073, at *4 (E.D.N.Y. July 22, 2016). Here, it is undisputed that Spraus and

---

[13] Defendants argue that because plaintiffs fail to address qualified immunity in their opposition papers, this court should deem the claim abandoned and grant summary judgment on qualified-immunity grounds. *See* Defs.' Reply 9 (quoting *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003)). While courts have found such a failure sufficient grounds for dismissal, *see Gilliard v. City of New York*, No. 10–CV–5187 (NGG)(CLP), 2013 WL 521529, at *14 n.17 (E.D.N.Y. Feb. 11, 2013) (collecting cases); *see also Parrilla v. City of New York*, No. 09 Civ. 8314(SAS), 2011 WL 611849, at *1 n.4 (S.D.N.Y. Feb. 16, 2011), I have decided to "first examin[e] the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial," *Gilliard*, 2013 WL 521529, at *14 n.17 (quoting *Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)).

Christopher each accepted an ACD. *See* Pls.' 56.1 Opp'n ¶ 23. Because the proceedings against Spraus and Christopher did not terminate in their favor, their malicious prosecution claims fail.[14]

## III. Excessive Force

McKnight argues that Detective Salazar violated her Fourth Amendment rights by using excessive force. *See* Compl. ¶¶ 49–50. Defendants contend that there was no use of force but argue that even if McKnight's allegation were true, Detective Salazar's conduct would not "rise to the level of a constitutional violation." Defs.' Mem. of Law 18. They further allege that Detective Salazar is entitled to qualified immunity. *See id.* at 21–22.

To prevail on an excessive-force claim brought under the Fourth Amendment, a plaintiff must show that the officer's actions were objectively unreasonable. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). This will depend on "the facts and circumstances of [the] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

Plaintiff need not have suffered a serious or lasting injury to prevail, as "[d]efendants are liable as long as the force used exceeded the force needed for the factual circumstances." *Graham v. City of New York*, 928 F. Supp. 2d 610, 618 (E.D.N.Y. 2013) (collecting cases); *see also Carpenter v. City of New York*, 984 F. Supp. 2d 255, 267 (S.D.N.Y. 2013) (declining to grant summary judgment on plaintiffs' excessive-force claims despite their only obtaining minor injuries). While some district courts in this circuit have held that a plaintiff's injury must

---

[14] Since Spraus's and Christopher's malicious-prosecution claims fail on unfavorable termination grounds, I do not address the probable-cause and malice factors.

generally rise above a de minimis level before force can qualify as excessive under the Fourth Amendment, *see e.g.*, *Williams v. City of New York*, No. 05 Civ. 10230(SAS), 2007 WL 2214390, at *7, *11 (S.D.N.Y. July 26, 2007), there is no binding precedent that requires a plaintiff to show more-than-de-minimis force or injury to prevail on a Fourth Amendment excessive-force claim, and I have declined to extend the more-than-de-minimis requirement to this context. *See, e.g.*, *Lopez v. City of New York*, No. 15-CV-7292-ARR-SJB, 2018 WL 2744705, at *7 (E.D.N.Y. June 7, 2018).

Defendants are not liable for civil damages if they have qualified immunity. An officer is entitled to qualified immunity unless he has "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* (citation omitted).

Defendants first argue that McKnight's excessive-force claim fails because it was reasonable to handcuff McKnight while executing a valid search warrant. *See* Defs.' Mem. of Law 16–17. As discussed *supra* note 5, the handcuffing of McKnight in these circumstances was lawful. The relevant question, however, is whether there is any factual dispute that places the reasonableness of the force used by Detective Salazar into doubt. The parties here clearly disagree over the force used on McKnight. *See* Factual and Procedural Background, *supra*. Construing the facts in the light most favorable to McKnight, as I must, McKnight was upset but

not behaving aggressively or unlawfully when Detective Salazar threw her to the ground on her visibly pregnant stomach while handcuffed. *See, e.g.*, McKnight Dep. 47:22–49:06, 55:20–56:21; Chyna Dep. 54:19–21, 71:03–25.[15] On these facts, it does not appear that McKnight presented a threat or demonstrated resistance such that Detective Salazar's alleged use of force would be reasonable. *See Graham v. Connor*, 490 U.S. at 396; *see also Jackson v. City of New York*, 939 F. Supp. 2d 235, 254 (E.D.N.Y. 2013) ("The Court has already concluded that Plaintiff had not committed and did not appear to be committing any crime at the time of her initial detention. Therefore, at a minimum, there exists a question of fact with respect to the reasonableness of the force used by arresting officers . . . .").

The cases defendants cite in support of their claim that being thrown to the floor does not constitute excessive force are unpersuasive, because neither of those cases involves an allegedly visibly pregnant plaintiff. *See* Defs.' Mem of Law 18 (first citing *Holmes v. City of New York*, No. 14 CV 5253-LTS, 2016 WL 915332, at *5 (S.D.N.Y. Mar. 4, 2016); then citing *Brown v. City of New York*, No. 11 Civ. 1068(AJN), 2013 WL 491926, at *10 (S.D.N.Y. Feb. 8, 2013)). In fact, in *Rodriguez v. Village of Ossining*, an excessive-force case that does involve a pregnant plaintiff, the court found that the officer who allegedly threw the pregnant plaintiff against a car was entitled to qualified immunity "because by Plaintiff's account, [the officer] did not know she was pregnant at the time he threw her against the car." 918 F. Supp. 2d 230, 242 (S.D.N.Y. 2013). Here, by contrast, plaintiffs contend that McKnight was visibly pregnant and had

---

[15] Detective Ferrara testified that while McKnight threatened to spit on the officers and spat towards Detective Salazar, *see* Ferrara Dep. 19:12–18, 25:11–22, there was no physical resistance, *see id.* at 25:04–10, 25:23–25.

communicated her pregnancy to the officers prior to the incident.[16] *See, e.g.*, McKnight Dep. 47:22–49:06, 56:05–09; Chyna Dep. 71:20–25.

Although defendants are correct that McKnight did not suffer a serious injury, *see* Defs.' Mem of Law 18–19, the issue here is not the severity of McKnight's injury but rather the "excessive and gratuitous" nature of Detective Salazar's alleged force. *Jackson*, 939 F. Supp. 2d at 253. Because I cannot say that Detective Salazar's actions were objectively reasonable, summary judgment on McKnight's excessive-force claim is inappropriate. *See, e.g.*, *Carpenter*, 984 F. Supp. 2d at 267 ("Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." (quoting *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004))). Further, because factual disputes preclude a determination on whether a reasonable officer would find Detective Salazar's behavior lawful, he is also not entitled to summary judgment based on qualified immunity. *See, e.g.*, *Warr v. Liberatore*, 270 F. Supp. 3d 637, 650 (W.D.N.Y. 2017) (denying summary judgment on qualified immunity when questions of fact prevented the court from "mak[ing] a determination as to what a reasonable officer would have believed was reasonable in light of the circumstances").

## CONCLUSION

For the reasons set forth in this opinion, defendants' motion for summary judgment on Spraus's and Christopher's false-arrest and malicious-prosecution claims is granted. These claims are therefore dismissed. Because factual issues preclude a summary-judgment determination on McKnight's and Chyna's false-arrest claims against defendants Cortright,

---

[16] I note also that in *Rodriguez*, the plaintiff, unlike McKnight, was alleged to be resisting arrest. *Rodriguez*, 918 F. Supp. 2d at 242.

Noonan, and Schmitt and McKnight's excessive-force claim against defendant Salazar, these claims remain.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:   December 21, 2018
         Brooklyn, New York